UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

BELLEZA FRUIT, INC.,

                Plaintiff,

       -against-

SUFFOLK BANANA CO., INC., LONG ISLAND
BANANA CORP., LONG ISLAND BANANA,
and THOMAS HOEY JR.,

              Defendants.

———————————————————————X

**OPINION & ORDER**
**CV-12-3033 (SJF)(WDW)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUL 05 2012   ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J.

## I.    Introduction

On June 18, 2012, plaintiff Belleza Fruit, Inc. ("plaintiff") filed a complaint against

defendants Suffolk Banana Co., Inc. ("Suffolk Banana"); Long Island Banana Corp. and Long

Island Banana (collectively, "LI Banana") and Thomas Hoey Jr. ("Hoey") (collectively,

"defendants"), pursuant to the Perishable Agricultural Commodities Act, 1930 ("PACA"), 7

U.S.C. § 499a, *et seq.*, accompanied by an application seeking an *ex parte* temporary restraining

order ("TRO") and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil

Procedure. By order dated June 18, 2012, *inter alia*, plaintiff's application for a TRO was

granted; defendants were restrained from alienating, dissipating, paying over or assigning any

PACA trust assets, and defendants' bank accounts containing funds relating to the PACA trust

assets were restrained, pending determination of plaintiff's application for a preliminary

injunction; and defendants were ordered to show cause why plaintiff's application for a preliminary injunction should not be granted. Thereafter, defendants cross-moved to dismiss plaintiff's first, second, third and sixth causes of action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, and for costs and attorneys' fees. For the reasons set forth herein, plaintiff's motion is granted to the extent set forth herein and defendants' cross motion is granted in part and denied in part.

II.      Background

     A.      Factual Background

Plaintiff is a New York corporation engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities ("produce") in interstate commerce. (Compl., ¶ 3; Declaration of Andrew P. Persichetti dated June 15, 2012 ["Persichetti Decl."], ¶ 5). From at least September 27, 2010 until May 2, 2011 and March 21, 2012 through the present ("the licensed periods"), plaintiff was a PACA licensee. (Compl., Ex. A; Persichetti Decl., ¶ 6).

Suffolk Banana and LI Banana are New York corporations, (Compl., ¶¶ 4-6; Ans., ¶¶ 4-6; Affidavit of Thomas Hoey in Opposition to Plaintiff's Motion for Preliminary Injunction ["Hoey Aff."], ¶ 1), of which Hoey is an officer and shareholder, (Compl., ¶ 7; Ans., ¶ 7; Hoey Aff., ¶ 1). Suffolk Banana and LI Banana are primarily in the business of purchasing and selling bananas and other produce to buyers in the New York Metropolitan area. (Hoey Aff., ¶ 3). It is undisputed that at all relevant times, Suffolk Banana and LI Banana were purchasers of wholesale quantities of produce subject to and licensed under the trust provisions of PACA. (Compl., ¶¶ 4-6; Ans. ¶¶ 4-6; Hoey Aff., ¶ 14).

According to Hoey: (1) Suffolk Banana and LI Banana have been doing business with plaintiff for approximately two (2) years, (Hoey Aff., ¶ 15); (2) most of the produce purchased by LI Banana from plaintiff originate from Ecuador and are delivered to defendants by trucking companies contracted by plaintiff, (id. at ¶ 19); (3) payment for the bananas is "delayed for a period of time while the shipment is inspected by [defendants] and until [plaintiff] delivers an invoice to [defendants,]" (id. at ¶ 20); (4) "on many occasions, [defendants] will file a claim with Plaintiff requesting an adjustment on the price originally quoted due to issues regarding the condition of the bananas or [produce] delivered, the lack of delivery, or other circumstances justifying payment abatements," (id.); and (5) he sometimes gave plaintiff "cash payments for produce that was accepted," (id.).

Plaintiff alleges: (a) that between September 27, 2010 and June 11, 2012, it sold and delivered to defendants wholesale quantities of produce which had been moved in interstate commerce and accepted by defendants without objection worth a total of one million nine hundred ninety-eight thousand four hundred two dollars and eighty-one cents ($1,998,402.81), (Compl., ¶¶ 9, 36; Perschetti Decl., ¶¶ 14, 16, 19); (b) that following each delivery of produce, plaintiff sent invoices to defendants containing the language required by PACA, 7 U.S.C. § 499e(c)(4), (Compl., ¶¶ 12-14); (c) that defendants have failed to pay in full for the produce when payments were due, despite repeated demands, (Compl., ¶¶ 10, 18), and have advised plaintiff that they do not intend to pay the outstanding amounts, (Compl., ¶ 18); (d) that the amount due and owing to plaintiff from Suffolk Banana totals two hundred forty-two thousand

3

two hundred thirty-nine dollars and ten cents ($242,239.10)[1], (Compl., ¶ 9); and (e) that the

amount due and owing to plaintiff from LI Banana totals one million seven hundred fifty-six

thousand one hundred sixty-three dollars and seventy-one cents ($1,756,163.71)[2], (Compl., ¶ 9).

According to plaintiff, "[d]efendants' failure, inability, and refusal to pay plaintiff shows that

[they] are failing to maintain sufficient assets in the statutory trust to pay plaintiff, and are

dissipating trust assets." (Compl., ¶ 19).

    All of the invoices sent by plaintiff to Suffolk Banana during the relevant time period

contain a payment period of twenty-one (21) days from the date of delivery and the following

legend:

> "The Perishable Agricultural Commodities listed on this invoice are sold subject
> to the staturory [sic] trust authroized [sic] by section 5C of the Perishable
> Agricultural Commodities Act 1930 (7USC499(E(C) [sic].  The seller of these
> commodities retains a trust claim on these commodities, all Inventories of food or
> other products derived from these commodities, and any recievable [sic] or

---

[1] Plaintiff claims that Suffolk Banana failed to make full payment on thirty-eight (38)
invoices dated from December 30, 2010 through June 8, 2012.  (Compl., Ex. C).  However,
payment on three (3) of the invoices-- invoice numbers 3425 dated June 1, 2012; invoice number
3444 dated June 6, 2012; and invoice number 3447 dated June 8, 2012-- was not due at the time
this action was commenced.  (Id.)  Accordingly, at most, Suffolk Banana failed to make full
payment on only thirty-five (35) of the invoices at the time this action was commenced, totaling
two hundred sixteen thousand eight hundred seven dollars and ten cents ($216,807.10).  (See id.)

[2] Plaintiff claims that LI Banana failed to make full payment on one hundred ninety-two
invoices dated from September 27, 2010 through June 9, 2012.  (Compl., Ex. C).  However,
payment on ten (10) of the invoices-- invoice numbers 3412 and 3413 dated May 30, 2012;
invoice number 3414 dated May 31, 2012; invoice number 3408 dated June 1, 2012; invoice
number 3411 dated June 4, 2012; invoice numbers 3439 and 3443 dated June 6, 2012; invoice
number 3446 dated June 7, 2012; invoice number 3448 dated June 8, 2012; and invoice number
3449 dated June 9, 2012-- was not due at the time this action was commenced.  (Id.)
Accordingly, at most, LI Banana failed to make full payment on only one hundred eighty-two
(182) of the invoices at the time this action was commenced, totaling one million six hundred
sixteen thousand eight hundred forty-three dollars and seventy-one cents ($1,616,843.71).  (See
id.)

proceeds from the sale of these commodities until full payment is recieved [sic]." (Compl., Ex. C).

Defendants admit that "at times, Plaintiff sold and shipped produce to [them]," (Ans., ¶ 12), and that they have advised plaintiff that they will not pay for "rejected or defective produce," (Ans., ¶ 18). According to Hoey, during the period from June 2011 through June 2012: (a) LI Banana paid more than five million nine hundred sixty-nine thousand five hundred fifty-four dollars and ninety cents ($5,969,554.90) to plaintiff for bananas it had purchased; and (b) Suffolk Banana paid more than one million three hundred sixty-six thousand six hundred forty-one dollars and forty cents ($1,366,641.40) to plaintiff for bananas it had purchased. (Hoey Aff., ¶¶ 16-17). Hoey avers that defendants challenged many of plaintiff's invoices, either by noting their objections to shipments or payment terms on the invoices upon delivery of the produce or via e-mails with plaintiff's representatives, and "are entitled to credit for defective deliveries." (Hoey Aff., ¶¶ 26, 33, 39). In addition, Hoey challenges some of the invoices on the basis that defendants never received the load, e.g., invoice no. 2771. (Hoey Aff., ¶ 34). In his affidavit, Hoey avers that "[LI Banana] does not dispute that it may owe some money to [plaintiff]," although he contests the amount claimed by plaintiff to be due and owing from LI Banana and that he ever refused to pay plaintiff. (Hoey Aff., ¶¶ 5, 11).

According to Hoey, the parties "never adhered to a set payment schedule," (Hoey Aff., ¶¶ 18, 36), and "[t]he business dealings between [LI Banana] and [plaintiff] over the past two years found [LI Banana] owing [plaintiff] as much as $1 million at a time with payments routinely made on purchases more than 60 days old," (id. at 21). In his declaration, Persichetti, plaintiff's principal, (Persichetti Decl., at p. 1), avers, inter alia: (1) that in or about September 2010 and

5

December 2010, he began noticing that LI Banana and Suffolk Banana, respectively, were slow in paying their outstanding invoices, (Persichetti Decl., ¶¶ 21-22); (2) that on or after June 9, 2012, he spoke with Hoey regarding the outstanding balances due and owing to plaintiff from defendants and although Hoey made "repeated promises" to pay, full payment was never received by plaintiff, (id. at ¶¶ 23-25, 28); (3) that thereafter, he "investigated and learned that defendants have failed to maintain sufficient trust assets to satisfy its obligations to [plaintiff], and is dissipating PACA trust assets," (id. at ¶ 29); (4) that based upon his "experience in the collection of Produce related receivables, * * * when a situation has deteriorated to this extent, it inevitably leads to the liquidation of the entity charged with maintaining the PACA trust * * * [and] such dissipation will undoubtedly continue until any hope of recovery is lost * * *," (id. at ¶¶ 32-33); and (5) that based upon defendants' failure to pay its obligations to plaintiff and "the record of unsatisfied judgments, liens and tax liens against [them]," he believes that defendants are insolvent and/or have liabilities in excess of their assets, (id. at 34).

Hoey contends that although plaintiff sent invoices to defendants, it never sent them an account reconciliation statement until May 30, 2012. (Hoey Aff., ¶¶ 22, 38). In his affidavit, Hoey avers, *inter alia*, that Suffolk Banana and LI Banana "have been in existence for 69 years with no bankruptcies or claims unsettled," (Hoey Aff., ¶ 7), and that if a preliminary injunction is granted, "[LI Banana] may not be able to conduct business and will be irreparably harmed, as will its employees if it can't make payroll.," (id. at ¶ 8).


B.     Procedural Background

On June 18, 2012, plaintiff filed a complaint against defendants in this Court alleging

6

causes of action, *inter alia*: (1) for failure to pay trust funds in violation of PACA, 7 U.S.C. §§ 499(b)(2) and (4), 499e(a), (c)(2) and (c)(4) (first cause of action against all defendants); (2) for failure to pay for goods sold in violation of PACA, 7 U.S.C. §§ 499(b)(2), 499e(a), (c)(2) and (c)(4) (second cause of action against all defendants); (3) for unlawful dissipation of trust assets by a corporate official in violation of PACA, 7 U.S.C. § 499b(4), and/or breach of fiduciary duty (third cause of action against Hoey); (4) for breach of contract and an account stated (fourth cause of action against all defendants); (5) for prejudgment interest and attorneys' fees (fifth cause of action against all defendants); and (6) for unjust enrichment (sixth cause of action against all defendants). On that same date, plaintiff filed an *ex parte* motion pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking a TRO and preliminary injunction: (1) restraining (a) defendants' bank accounts and (b) defendants from transferring any and all PACA trust assets pending their full payment of the amount due and owing to plaintiff; (2) requiring defendants to set aside the full amount plaintiff contends is due and owing to plaintiff in trust pending further order of this Court; (3) requiring defendants to supply plaintiff's counsel with documentation regarding defendants' assets, as well as the assets of their related and subsidiary companies; and (4) authorizing plaintiff's counsel to collect defendants' outstanding accounts receivables to be held in trust pending further order of this Court. By order dated June 18, 2012, plaintiff's application for a TRO was granted, with the PACA trust assets belonging to plaintiff and in the possession of defendants serving as plaintiff's security therefor, and defendants were directed to show cause on June 20, 2012 why the preliminary injunction sought by plaintiff should not be granted.

Thereafter, defendants cross-moved to dismiss plaintiff's first, second, third and sixth

7

causes of action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, and for costs and attorneys' fees.

III.     Discussion

    A.     Standard for Injunctive Relief

    "The usual standard for preliminary injunctions applies to 'applications based upon the duties of a statutory trustee' under PACA." Bonell Produce Co. Inc. v. Chloe Foods, Inc., No. 08-CV-4218, 2008 WL 4951942, at * 3 (quoting JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990)); see also Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 140 (3d Cir. 2000); Horizon Marketing v. Kingdom International Ltd., 244 F. Supp. 2d 131, 140 (E.D.N.Y. 2003).  In order to obtain a preliminary injunction, a plaintiff must demonstrate: (a) that "irreparable harm is likely in the absence of an injunction," Winter v. Natural Resources Defense Council, 555 U.S. 7, 22, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); (b) "either (1) likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief, UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc., 660 F.3d 643, 648 (2d Cir. 2011) (quoting Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (quotations and citation omitted)); and (c) "that the public's interest weighs in favor of granting an injunction," Red Earth LLC v. U.S., 657 F.3d 138, 143 (2d Cir. 2011).  See Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011).   "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24, 129 S.Ct. at 376; see also UBS

8

<u>Financial</u>, 660 F.3d at 648.  "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." <u>Winter</u>, 555 U.S. at 24, 129 S. Ct. at 376 (quotations and citation omitted).

Preliminary injunctions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981).  Accordingly,

> "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction.  The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage.  To hold otherwise would be at odds with the summary nature of the remedy and would undermine the ability of courts to provide timely provisional relief."

<u>Mullins v. City of New York</u>, 626 F.3d 47, 52 (2d Cir. 2010).  Moreover, the party seeking a preliminary injunction "is not required to prove his case in full" at the preliminary injunction stage. <u>Camenisch</u>, 451 U.S. at 395, 101 S. Ct. 1830.

>      1.      Likelihood of Success

Plaintiff alleges that it is a trust beneficiary entitled to enforce the trust provisions of PACA insofar as it is a "commission merchant and dealer as those terms are used in the PACA" and "a supplier or seller of perishable agricultural commodities," (Plf. Mem., at 5); it sold produce to defendants between the period from September 27, 2010 through June 9, 2012, for which a balance is due and owing from defendants; and it preserved its rights under PACA. Defendants contend that "Plaintiff is not likely to succeed in demonstrating [that] the majority of the invoices in [its] moving papers have not been paid." (Def. Mem., at 15).  Defendants contend

that an evidentiary hearing is necessary to resolve disputed factual issues before a preliminary injunction may issue.[3]

PACA creates "a statutory trust over any goods, receivables, or proceeds from perishable agricultural commodities until the buyer makes full payment." Hiller Cranberry Products, Inc. v. Koplovsky, 165 F.3d 1, 4-5 (1st Cir. 1999); see 7 U.S.C. § 499e(c) ("Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents."); 7 C.F.R. § 46.46(b) ("The trust is made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom. Trust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of trust assets is contemplated."). See also American Banana Co., Inc. v. Republic National Banke of N.Y., N.A., 362 F.3d 33, 38 (2d Cir. 2004) ( holding that PACA "impresses a 'non-segregated "floating" trust' on the commodities and their derivatives, in the sense that it permits buyers-i.e., trustees-to commingle PACA trust assets with their other assets." (quoting 7 C.F.R. § 46.46(b))). This statutory trust is established for the benefit of

---

[3] A hearing was held on June 20, 2012, at which the parties were permitted to argue their respective positions, but no evidence was taken at that time.

sellers and suppliers and "arises from the moment perishable goods are delivered by the seller." Hiller Cranberry, 165 F.3d at 8; see 7 C.F.R. § 46.46(c)(1) ("When a seller, supplier or agent who has met the eligibility requirements of [PACA], transfers ownership, possession, or control of goods to a commission merchant, dealer, or broker, it automatically becomes eligible to participate in the trust.  Participants who preserve their rights to benefits in accordance with [PACA] remain beneficiaries until they are paid in full.").  See also Taylor & Fulton Packing, LLC v. Marco International Foods, LLC, No. 09-cv-2614, 2011 WL 6329194, at * 5 (E.D.N.Y. Dec. 16, 2011) (holding that the PACA trust "is formed at the moment the buyer receives the produce and remains in effect until the seller is paid in full.")  "A buyer's failure to tender prompt payment triggers civil liability * * *."  Baiardi Food Chain v. United States, 482 F.3d 238, 241 (3d Cir. 2007); see also American Banana, 362 F.3d at 36 ("If a buyer fails to make a prompt payment, a seller may seek to recover resulting damages by either (1) filing a complaint with the Secretary of the U.S. Department of Agriculture * * *, or (2) filing a lawsuit in any court of competent jurisdiction." (quotations and citations omitted)); Taylor & Fulton, 2011 WL 6329194, at * 5 ("PACA * * * makes it unlawful for a recipient dealer or broker to fail to make payment promptly or to fulfill any other conditions of the parties' agreement.").

"Strict eligibility requirements accompany the extraordinary protection afforded by PACA's trust provision."  American Banana, 362 F.3d at 42.  "One such requirement is that a seller seeking PACA trust protection must be selling produce on a cash or short-term credit basis."  Id.  Regulations promulgated by the United States Department of Agriculture pursuant to PACA ("PACA regulations") provide a default payment period, i.e., that "for produce purchased by a buyer, payment must be made 'within 10 days after the day on which the produce is

11

accepted.'" Bonell, 2008 WL 4951942, at * 3 (quoting 7 C.F.R. § 46.2(aa)(5)). Where the

parties agree to a different payment period, they "must reduce their agreement to writing before

entering into the transaction * * * [and] the party claiming the existence of such an agreement for

time of payment shall have the burden of proving it." 7 C.F.R. §§ 46.2(aa)(11), 46.46(e)(1).

"The maximum time for payment for a shipment to which a seller, supplier, or agent can agree,

prior to the transaction, and still be eligible for benefits under the trust is 30 days after receipt and

acceptance of the commodities * * *." 7 C.F.R. § 46.46(e)(2). "In summary, [PACA]

regulations require a buyer to pay the seller within ten days after the buyer has accepted the

produce, but permit the parties to agree in writing before the transaction to other payment periods

that do not exceed thirty days." American Banana, 362 F.3d at 43. "Sellers who offer payment

periods of longer than thirty days are not entitled to PACA trust protection." Id. Accordingly, "a

seller who has otherwise complied with the requirements for PACA trust protection [can] waive

that protection," Bonell, 2008 WL 4951942, at * 3, by agreeing, either orally or in writing, to a

payment period exceeding thirty (30) days. American Banana, 362 F.3d at 47; see also Baiardi,

482 F.3d at 242 (holding that produce buyers are required to make full payment within ten (10)

days of the date on which the produce is accepted, unless the parties otherwise expressly agree in

writing prior to the time of the transaction to other payment periods that do not exceed thirty days

and that "[t]he protection of the trust is forfeited by an agreement between the parties for

payment that exceeds thirty days."); Hiller Cranberry, 165 F.3d at 5 (holding that the parties may,

upon written agreement, extend PACA's ten (10)-day time period for payment up to thirty (30)

days, but that any agreement extending the payment period beyond thirty (30) days "generally

constitutes a waiver of rights under the PACA trust.") Prior to April 13, 2011, the law in this

Circuit was that a seller forfeited eligibility under the PACA trust by agreeing to a payment schedule in excess of thirty (30) days even after the buyer's default in payment. See American Banana, 362 F.3d at 43-5 (holding that 7 C.F.R. § 46.46(e)(2) applies to both pre-transaction and post-default payment agreements). However, Section 46.46(e) of the PACA regulations was amended, effective April 13, 2011, to provide that "[i]f there is a default in payment * * *, the seller, supplier, or agent who has [otherwise] met the eligibility requirements of [PACA] will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment." 7 C.F.R. §46.46(e)(3).

In order to establish a PACA trust,

> "[t]he seller must demonstrate that: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser of its intention to do so.'"

Taylor & Fulton, 2011 WL 6329194, at * 5 (quoting S. Katzman Produce, Inc. v. Won, No. 08 Civ. 2403(KAM), 2009 WL 2448408, at * 4 (E.D.N.Y. Aug. 7, 2009)); see also DiMare Homestead, Inc. v. Alphas Co. of N.Y., No. 09 Civ. 6644, 2011 WL 2988629, at * 3 (S.D.N.Y. July 22, 2011) (accord; A&J Produce Corp. v. Chang, 385 F. Supp.2d 354, 358 (S.D.N.Y. 2005). "While PACA imposes a trust requirement when perishable agricultural commodities are delivered, 'to preserve benefits under a PACA trust, the unpaid produce seller must deliver written notice to the buyer [of its intent to preserve its trust rights].'" A&J Produce, 385 F.Supp.2d at 358 (quoting C.H. Robinson Co. v. Alanco Corp., 239 F.3d 483, 486 (2d Cir. 2001)); see 7 U.S.C. § 499e(c)(3) and (4); 7 C.F.R. § 46.46(f). "Under PACA, notice may be

13

provided in one of two forms: (1) a written notice within thirty calendar days after payment was

due, 7 U.S.C. § 499e(c)(3) ('the written notice method'), or (2) a printed statement on its regular

invoices, 7 U.S.C. § 499e(c)(4) ('the invoice method')." DiMare, 2011 WL 2988629, at * 3; see

7 C.F.R. § 46.46(f) ("(1) Notice of intent to preserve benefits under the trust must be in writing *

* *[;] (2) Timely filing of a notice of intent to preserve benefits under the trust will be considered

to have been made if written notice is given to the debtor within 30 calendar days [after

expiration of the time for payment] * * *[;] (3) Licensees may choose an alternate method of

preserving trust benefits * * * [and] may use their invoice or other billing statement * * *,

whether in documentary or electronic form, to preserve trust benefits. * * *."); see also Horizon

Marketing, 244 F.Supp.2d at 140 (holding that the notice required by PACA "may be given by

'ordinary and usual billing or invoice statements,' which must include specific language

informing the buyer of the seller's intention to preserve its rights to the trust." (quoting 7 U.S.C.

§ 499e(c)(4))); Bonell, 2008 WL 4951942, at * 2 ("[T]imely notice of the intent to preserve

PACA trust rights * * * can be done with notice printed on the invoice accompanying the

produce.") "Proper notice under the 'invoice method' consists of three independent requirements

* * *[:] [1] the bill or invoice statements must be 'ordinary and usual,' meaning

'communications customarily used between parties to a transaction in perishable agricultural

commodities in whatever form, documentary or electronic, for billing or invoicing purposes.' 7

C.F.R. § 46.46(5)(2005) * * *[;] [2] the payment period must appear on the bill or invoice if it

differs from the [ten day] default payment period established by the regulations[;] * * * [and] [3]

sellers must print on the bill or invoice a statement of intent to preserve the trust, the precise

language of which is provided in the statute." A&J Produce, 385 F. Supp. 2d at 361.

"Once sellers have gained the protection of a PACA trust, they will 'remain beneficiaries until they are paid in full.'" Bonell, 2008 WL 4951942, at * 2 (quoting 7 C.F.R. § 46.46(c)(1)). PACA regulations require "[c]ommission merchants, dealers and brokers * * * to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities" and provide that "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of Section 2 of [PACA], (7 U.S.C. 499b)." 7 C.F.R. § 46.46(d)(1). "[A] PACA trust in effect imposes liability on a trustee . . . who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities." Bonell, 2008 WL 4951942, at * 2 (quoting Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993)); see also Hiller Cranberry, 165 F.3d at 9 ("[A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of perishables for legitimate business expenditures, * * *.")

It is undisputed: (1) that plaintiff was a PACA licensee as of September 27, 2010 until May 3, 2011 and from March 21, 2012 to present ("the licensed periods"); (2) that plaintiff sold perishable agricultural commodities, i.e. bananas, to defendants during the licensed periods; (3) that defendants were subject to the trust provisions of PACA; (4) that the bananas, grown in Ecuador or Costa Rica, moved in interstate or foreign commerce; (5) that the invoices plaintiff provided to defendants during the licensed periods contain a twenty-one (21) day payment period and the requisite language of intent to preserve the trust under PACA, 7 U.S.C. § 499e(c); and (6)

15

that defendants have not made full payment on at least some of the invoices provided during the licensed periods.  Thus, plaintiff has established the existence of a statutory trust under PACA at least with respect to the invoices provided to defendants during the licensed periods.  See, e.g. Six L's Packing, Inc. v. Alphas Co. of N.Y., No. 11 Civ. 2944, 2012 WL 505744, at * 2 (S.D.N.Y. Feb. 15, 2012).

> a.   LI Banana

Upon review of the documentation submitted by both parties, plaintiff has established a likelihood of success on the merits on its PACA claims against LI Banana in the amount of at least three hundred nineteen thousand seven hundred seven dollars and fifty cents ($319,707.50). Specifically, plaintiff has submitted twenty-five (25) invoices, containing a twenty-one (21) day payment period and the language required by PACA for plaintiff to have preserved its PACA rights, relating to produce delivered to LI Banana on April 13, 2011 (Invoice No. 1696), April 29, 2011 (Invoice No. 1768)[4] and between the period from March 26, 2012 through June 18, 2012, the date this action was commenced, with a balance due in the amount of at least three hundred nineteen thousand seven hundred seven dollars and fifty cents ($319,707.50), for which

---

[4] There is no evidence that plaintiff ever agreed prior to the transactions at issue, i.e., the delivery of the bananas to LI Banana, to a payment schedule in excess of thirty (30) days with respect to these two (2) invoices, (Invoice Nos. 1696 and 1768), thereby potentially forfeiting its rights under PACA.  Since these invoices pertain to deliveries made on or after April 13, 2011, plaintiff did not forfeit eligibility under the PACA trust by accepting partial payment of the invoice amounts from LI Banana.  See 7 C.F.R. § 46.46(e)(3), effective April 13, 2011.  To the contrary, pursuant to American Banana, 362 F.3d at 4305, plaintiff may have forfeited its PACA trust rights with respect to five (5) invoices (Invoice Nos. 1319, 1367, 1488A, 1501 and 1652) sent to LI Banana prior to April 13, 2011 and for which it accepted partial payment. Accordingly, plaintiff has not established its likelihood of success on the merits with respect to those five (5) invoices.

defendant has failed to proffer evidence of full payment.[5] Of those twenty-five (25) invoices: (a) there is no evidence pertaining to the quality of the produce delivered to defendants, or otherwise indicating a potential explanation for defendants' failure to pay the full amount other than that they believed the rate reflected on four (4) of the invoices (Invoice Nos. 3246, 3248, 3309, 3310) was "too high," with respect to eight (8) of the invoices (Invoice Nos. 3246, 3248, 3309, 3310, 3332, 3351, 3353 and 3399); (b) there is no evidence that defendants ever sent a notice of claim to plaintiff regarding the quality of the produce they noted on their own copies of the invoices and/or bills of lading to be poor, or otherwise disputed the amount due, with respect to eight (8) other invoices (Invoice Nos. 1696, 1768, 3184, 3249, 3250, 3372, 3374, 3400); and (c) there remains, at the very least, a discounted balance due with respect to eight (8) of the remaining nine (9) invoices (Invoice Nos. 3227, 3257, 3276, 3373, 3378, 3398, 3402 and 3403) for which defendants appear to have submitted a claim to plaintiff based upon the quality of the produce delivered.[6] Thus, plaintiff has sufficiently demonstrated its entitlement to payment on at least the

---

[5] With respect to an additional invoice (Invoice No. 1488), dated February 13, 2011, defendants claim that they never received that invoice, nor a bill of lading with respect that invoice indicating that LI Banana ever received that load of bananas. Plaintiff has also not produced a bill of lading with respect to that invoice. Accordingly, plaintiff has not established a likelihood of success on its PACA claim relating to that invoice.

[6] With respect to the ninth invoice (Invoice No. 3376 dated May 18, 2012), defendants have submitted evidence, e.g., a Quality Statement of Loss dated June 24, 2012, indicating that the whole load was dumped as a result of the bananas being chilled. Accordingly, plaintiff has not established a likelihood of success on the merits on its PACA claim with respect to that invoice. With respect to the invoices for which defendants claim the amount due to have been discounted due to the quality of the produce delivered, "PACA trust protections apply to contracts * * * where the parties 're-negotiate' the price after delivery of the goods based on challenges to the quality of the goods," Six L's Packing, 2012 WL 505744, at * 3 (citing cases), and there is no evidence that defendants paid even the discounted amount. It is unnecessary at this stage in the proceedings to determine whether the parties agreed to a discounted price based upon the quality of the produce delivered, or whether defendants unilaterally decided to pay a

discounted amount, if any, of those twenty-four (24) invoices, totaling three hundred nineteen thousand seven hundred seven dollars and fifty cents ($319,707.50).

      b.    Suffolk Banana

However, plaintiff has not established a likelihood of success on the merits with respect to its PACA claims against Suffolk Banana. The documentary evidence submitted on the motions establishes that only four (4) invoices were not paid in full by Suffolk Banana during the licensed periods, i.e., Invoice Nos. 1416, 1528, 3265 and 3370.[7] With respect to two (2) of those invoices (Invoice Nos. 3265 and 3370), defendants have submitted evidence that they sent plaintiff notices of claim pertaining to the quality of the produce delivered to Suffolk Banana, i.e., claiming that the whole load had to be thrown out because the bananas were "ripe and turning," (Invoice No. 3265), and that there were "crushed boxes throughout [sic] load," (Invoice No. 3370). Thus, plaintiff has not established a likelihood of success on the merits of its PACA claims seeking full payment of those invoices at this preliminary stage of the proceedings.

----

discounted price based upon the quality of the produce, in light of defendants' failure to pay the full amount of even the discounted price. The issue of the actual amount due on each invoice is more appropriately left to the finder of fact after a trial on the merits. See, e.g. Camenisch, 451 U.S. at 395, 101 S. Ct. 1830 ("A party is not required to prove his case in full at a preliminary injunction hearing * * * and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."); Department of Health and Human Services, U.S. Food and Drug Admin. v. RxUSA Wholesale, Inc., 285 Fed. Appx. 809, 810 (2d Cir. July 10, 2008) (summary order) ("The factual findings and conclusions of law made by the District Court in granting a preliminary injunction are not binding in subsequent proceedings before the court."); Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1049 (2d Cir. 1992) (accord).

    [7] Defendants have submitted evidence indicating that the fifth invoice involved (Invoice No. 3401) was paid in full on June 12, 2012 (Check No. 13040).

With respect to the remaining two (2) invoices (Invoice Nos. 1416 and 1528), pertaining to transactions occurring prior to April 13, 2011, defendants have submitted evidence indicating that plaintiff may have waived its PACA trust rights relating to those invoices based upon, *inter alia*, its acceptance of partial payment of the amounts due under those invoices from defendants, (check nos. 11075 and 11249),[8] and failure to demand full payment of those invoices within thirty (30) days after the bananas had been delivered to Suffolk Banana. See, e.g. American Banana, 362 F.3d at 43-5. Accordingly, plaintiff has not established a likelihood of success on the merits with respect to its PACA claims against Suffolk Banana. Therefore, the branch of plaintiff's motion seeking a preliminary injunction against Suffolk Banana is denied.

### c.   Hoey

It is undisputed that Hoey was a principal of LI Banana with the ability to control LI Banana's operations, bank accounts and other assets. "An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act." Hiller Cranberry, 165 F.3d at 8-9; see also Taylor & Fulton, 2011 WL 6329194, at * 6 (holding that a trustee who was "in a position to control the assets of the PACA trust" and who "in any way encumbered the funds or rendered them less freely available to PACA creditors" may be personally liable). Hoey, as a statutory trustee under PACA who has breached his fiduciary duty to preserve the PACA trust assets, is individually liable for LI Banana's failure to preserve those statutory trust assets. See,

---

[8] It is undisputed that Suffolk Banana made partial payments of those invoices, but plaintiff claims that an additional three thousand five hundred eighty-five dollars and sixty cents ($3,585.60) remains dues and owing thereon.

e.g. A. Ferlito Farms, Inc. v. Empire Fresh Cuts, LLC, No. 5:10-CV-1044, 2010 WL 3909521, at
* 3 (N.D.N.Y. Sept. 30, 2010); Horizon Marketing, 244 F.Supp.2d at 145 ("[I]ndividuals who are
principals in corporations which bought produce, but failed to pay, are individually liable for
breach of their fiduciary duties.") Accordingly, plaintiff has established a likelihood of success
on the merits with respect to its claims against Hoey to the same extent that it has established a
likelihood of success on the merits with respect to its claims against LI Banana, i.e., in the
amount of three hundred nineteen thousand seven hundred seven dollars and fifty cents
($319,707.50).


      2.      Irreparable Injury

      Plaintiff alleges that it would be irreparably injured absent a preliminary injunction
insofar as "the PACA trust assets received and of which plaintiff is the beneficiary, will be used
by defendants to satisfy other debts or otherwise dissipated." (Memorandum of Law in Support
of Plaintiff's Application for a Preliminary Injunction pursuant to F.R. Civ. P. 65 ["Plf. Mem."],
at 4). Defendants contend that injunctive relief is inappropriate because they are an active
business and "wholly solvent," (Defendants' Memorandum of Law in Opposition to the
Plaintiff's Motion for Preliminary Injunction and in Support of Defendants' Motion to Dismiss
["Def. Mem."], at 9, 13), and plaintiff has failed to establish that they "are secreting monies or
otherwise making their assets unavailable to Defendants' creditors," (id. at 13).

      "The existence of a PACA trust is not, in itself, sufficient to warrant injunctive relief. A
separate showing of irreparable harm is necessary." Bonell, 2008 WL 4951942, at * 4. "A risk
that a PACA trustee will dissipate the trust constitutes irreparable harm." Bonell, 2008 WL

4951942, at * 3; see also Six L's Packing, Inc. v. Alphas Co. of N.Y., No. 11 Civ. 2944, 2012

WL 505744, at * 2 (S.D.N.Y. Feb. 15, 2012) (accord). PACA regulations define "dissipation" as

"any act or failure to act which could result in the diversion of trust assets or which could

prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in

connection with produce transactions." 7 C.F.R. § 46.46(a)(2). "Because of the requirement

that a PACA trustee 'maintain trust assets in a manner that such assets are freely available to

satisfy outstanding obligations to sellers,' 7 C.F.R. § 46.46(d)(1), the use of trust assets for any

purpose other than paying the beneficiary constitutes dissipation." Bonell, 2008 WL 4951942, at

* 4. "[E]ven payment for everyday business expenditures constitutes dissipation * * *." Id.

The evidence establishes, inter alia, that defendants admit to owing plaintiff some money

on overdue invoices for produce delivered to LI Banana and that LI Banana and Hoey have

dissipated trust asserts by, inter alia, paying business expenditures prior to paying their debt to

plaintiff. Moreover, defense counsel argued in its opposition, (see Def. Mem., at 13), and during

the hearing on plaintiff's motion for a preliminary injunction that defendants would have

difficulty paying payroll, bills and other business expenses, and may be forced out of business, if

their assets were restrained in the amount of the trust assets sought by plaintiff. Accordingly,

plaintiff has established a risk of irreparable injury.


3.      Public Policy

Defendants contend: (1) that "granting the injunction may force Defendants out of

business as the probability of Defendants' being able to continue to * * * pay * * * ordinary and

necessary business expenses will be remote if a 1.9 million dollar Court injunction is in place."

(Def. Mem., at 13) (emphasis added); and (2) that requiring defendants to place that amount "in trust" as an alternative to an injunction "would have an enormously detrimental impact on the Defendants' cash flow and would *probably* push the Defendants out of business," (id. at 13-14). According to defendants, public policy favors allowing them to continue conducting their business unencumbered by an injunction and "[i]njunctive relief alternatives exist, such as posting a bond." (Id. at 14, 18).

The statutory purpose of PACA "explicitly encapsulates" the public's interest in granting injunctive relief for violations of that statute. Tanimura, 222 F.3d at 140. Nonetheless, following the hearing on plaintiff's motion for a preliminary injunction, I agreed to vacate the temporary restraining order once defendants posted a bond with the Court in the amount of four hundred fifty thousand dollars ($450,000.00). I subsequently agreed to allow defendants to deposit that amount in escrow with their counsel in lieu of posting a bond and vacated the temporary restraining order upon proof that defendants deposited the four hundred fifty thousand dollar ($450,000.00) amount in escrow with their counsel. Weighing the public's interest in granting injunctive relief for PACA violations with defendants' interest in conducting their business unencumbered by the sweeping injunctive relief sought by plaintiff, including a total restraint of their bank accounts and collection of their accounts receivables, I find that causing the four hundred fifty thousand dollar ($450,000.00) amount to remain in escrow with defense counsel pending final resolution of this action or further order of this Court is sufficient to protect plaintiff's trust assets. Accordingly, plaintiff's motion for a preliminary injunction is granted to the extent of directing defense counsel to continue holding the four hundred fifty thousand dollar ($450,000.00) amount previously deposited with them by defendants in escrow pending final

22

resolution of this action or further order of this Court, and plaintiff's motion is otherwise denied.

B.      Cross Motion to Dismiss

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-20 (2d Cir. 2010)(accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 556 U.S. 662, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Matson v. Board of Education of City School District of New York, 631

23

F.3d 57, 63 (2d Cir. 2011); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); see also Ruston

v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010), cert. denied, 131 S.Ct.

824, 178 L.Ed.2d 556 (2010) ("When there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to

relief.") However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal,

556 U.S. 662, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." Id. at 1950; see also Ruston, 610 F.3d

at 59 ("A court can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is

needed to make the claim plausible." Arista Records, 604 F.3d at 120-1; see also Matson, 631

F.3d at 63 ("While a complaint need not contain detailed factual allegations, it requires more than

an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation

omitted)).

The Court must limit itself to the facts alleged in the complaint, which are accepted as

true; to any documents attached to the complaint as exhibits or incorporated by reference therein;

to matters of which judicial notice may be taken; or to documents upon the terms and effect of

which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint.

Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002) (citing International

Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)); see also

DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). The presentation of any other

24

extrinsic material on a motion to dismiss, which is not excluded from consideration by the court, requires the court to convert the motion into one seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and to provide the parties with notice of the conversion and an opportunity "to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009); Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006).

### 1. PACA Claims

Defendants contend that plaintiff was not a PACA licensee during the period from May 3, 2011 through March 21, 2012 and, therefore, its PACA claims relating to transactions occurring during that period must be dismissed. Defendants further contend that plaintiff's PACA causes of action should be dismissed in their entirety since: (1) "[t]he facts establish" that plaintiff failed to adhere to the "'full payment promptly' PACA regulations," (Def. Mem. at 12), and, therefore, forfeited trust protection under PACA; (2) "plaintiff never established a trust for the amounts claimed owing during its non-licensee period by giving notice pursuant to § 499e(c)(3)," (Supplemental Memorandum of Law in Further Opposition to Motion for Preliminary Injunction ["Def. Supp. Mem."] at 13); and (3) they are barred by accord and satisfaction because plaintiff accepted partial payments on some of the invoices without explicitly reserving its rights.

Under PACA, "no person shall at any time carry on the business of a commission merchant, dealer, or broker without a license valid and effective at such time." 7 U.S.C. § 499c(a); 7 C.F.R. § 46.3(a); see also Baiardi Food Chain v. United States, 482 F.3d 238, 240 (3d Cir. 2007) ("Under the PACA, every dealer of perishable agricultural commodities is required to

be licensed by the Secretary of Agriculture.") Any person found to be in violation of the licensing

provision is subject to penalties by the United States. 7 U.S.C. § 499c(a). In order to obtain a

PACA license, a person must make an application to the Secretary of Agriculture and pay a

license fee. 7 U.S.C. § 499c(b). "Thereafter, the licensee shall pay such license fees annually or

at such longer interval as the Secretary may prescribe." 7 U.S.C. § 499c(b)(2).

> "Whenever an applicant has paid the prescribed fee the Secretary, * * *, shall
> issue to such applicant a license, which shall entitle the licensee to do business as
> a commission merchant and/or dealer and/or broker unless and until it is
> suspended or revoked by the Secretary in accordance with the provisions of this
> chapter, or is automatically suspended under section 499g(d) of this title, but said
> license shall automatically terminate on the anniversary date of the license at the
> end of the annual * * * period covered by the license fee unless the licensee
> submits the required renewal application and pays the applicable renewal fee * *
> *: *Provided*, That notice of the necessity of renewing the license and of paying the
> renewal fee * * * shall be mailed at least thirty days before the anniversary date. *
> * *."

7 U.S.C. § 499d(a) (emphasis in original); see also 7 C.F.R. § 46.9(i) ("[A]t least 30 days prior to

the anniversary date of a valid and effective license, the Director shall mail a notice to the

licensee at the last known address advising that the license will automatically terminate on its

anniversary date unless an application for renewal is filed * * *, and unless the renewal fee * * *

is paid on or before such date.") PACA regulations define "licensee" to mean "any firm who

holds an unrevoked and valid unsuspended license issued under [PACA]." 7 C.F.R. § 46.2(l).

Since it is undisputed that plaintiff was a PACA licensee from at least September 27,

2010, the date of the first invoice of which plaintiff seeks payment, through and including May 3,

2011 and from March 21, 2012 through present, the complaint states a plausible cause of action

under PACA relating to invoices during the licensed periods. Moreover, as noted above, PACA

regulations effective April 13, 2011 expressly provide that a seller does not "forfeit eligibility

under the [PACA] trust by * * * accepting a partial payment." 7 C.F.R. §46.46(e)(3).

Accordingly, plaintiff's PACA claims are not barred under the doctrine of accord and satisfaction based upon it acceptance of partial payment on invoices dated on or after April 13, 2011. Thus, to the extent defendants seek dismissal of plaintiff's PACA claims (1) during the licensed periods based upon plaintiff's status as a PACA licensee and/or failure to give written notice as a non-licensee pursuant to 7 C.F.R. § 499e(c)(3) or (2) relating to invoices dated on or after April 13, 2011 as barred by the doctrine of accord and satisfaction, those branches of their cross motion are denied.

The issue of whether plaintiff held a valid PACA license between May 3, 2011 and March 21, 2012 cannot be determined on the face of the pleadings and requires resort to extrinsic evidence, e.g., copies of plaintiff's license(s), the purported "policy directive" from the deputy director of the PACA division of the United States Department of Agriculture, notices sent to plaintiff pursuant to 7 C.F.R. § 46.9(i) and/or witness testimony. Likewise, the related issues of whether plaintiff's PACA claims relating to invoices pre-dating April 13, 2011 (a) were forfeited based upon its purported failure to demand payment within the then-applicable thirty (30) day period or (b) are barred by the doctrine of accord and satisfaction, also require resort to extrinsic evidence. Moreover, in light of the expedited nature and purpose of a preliminary injunction, "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." Camenisch, 451 U.S. at 395, 101 S. Ct. 1830; see also Bristol-Myers, 973 F.2d at 1049 (accord). Accordingly, the branches of defendants' cross motion seeking dismissal of plaintiff's PACA claims and claims for attorney's fees pursuant to Rule 12(b) of the Federal Rules of Civil Procedure are denied.

2.     Unjust Enrichment Claim

Defendants contend, *inter alia*, that plaintiff's unjust enrichment claim (sixth cause of

action against all defendants) should be dismissed since a valid and enforceable contract exists

between the parties.[9]

Under New York law, "the theory of unjust enrichment lies as a quasi-contract claim and

contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual

agreement between the parties." Georgia Malone & Co., Inc. v. Rieder, — N.E.2d—, 2012 WL

2428246 (N.Y. June 28, 2012) (internal quotations, alterations and citations omitted); see also

Diesel Props S.R.L. v. Greystone Business Credit II LLC, 631 F.3d 42, 54 (2d Cir. 2011)

(accord); Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of N.J., Inc., 448

F.3d 573, 586-87 (2d Cir. 2006) (accord). "The existence of a valid and enforceable written

contract governing a particular subject matter ordinarily precludes recovery in quasi contract for

events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island Rail Road

Co., 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (N.Y. 1987). "A 'quasi contract'

only applies in the absence of an express agreement, and is not really a contract at all, but rather a

legal obligation imposed in order to prevent a party's unjust enrichment." Id. "[A] quasi-

contractual obligation is one imposed by law where there has been no agreement or expression of

assent, by word or act, on the part of either party involved." Id., at 388-89, 521 N.Y.S.2d 653

_____

[9] Defendants' contention that plaintiff cannot prove that the compensation it has received
from defendants was not the reasonable value of the services it provided to defendants requires
resort to extrinsic evidence and, thus, is not properly considered on this motion to dismiss
pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

(quotations, citation and emphasis omitted). "It is impermissible * * * to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." Clark-Fitzpatrick, 70 N.Y.2d at 389, 521 N.Y.S.2d 653; see also Beth Israel, 448 F.3d at 587 (accord).

It is undisputed that the relationship between the parties was defined by valid and enforceable contracts governing the particular subject matter of this case during the licensed periods and that plaintiff fully performed its obligations under those contracts, i.e., by delivering the bananas it sold to defendants. Accordingly, under New York law, plaintiff may not seek recovery based on a quasi-contractual theory with respect to its claims seeking payment on invoices during the licensed periods. See, e.g. Diesel Props, 631 F.3d at 54; Clark-Fitzpatrick, 70 N.Y.2d at 389, 521 N.Y.S.2d 653.

However, it cannot be ascertained at the pleadings stage whether the relationship between the parties was defined by valid and enforceable contracts during the period that plaintiff's PACA license is in dispute. "New York permits the alternative pleading of breach of contract and unjust enrichment claims- and the survival of both claims at the motion to dismiss stage-where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." Icebox-Scoops v. Finanz St. Honore, B.V., 676 F.Supp.2d 100, 114 (E.D.N.Y. 2009) (quotations and citation omitted); see also Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 2011 WL 6034310, at * 27 (S.D.N.Y. 2011) ("[A]lternative quasi-contractual claims may survive dismissal under Rule 8(d) [of the Federal Rules of Civil Procedure] where there is a dispute as to the validity of a governing contract * *

29

\*."); St. John's University, N.Y. v. Bolton, 757 F. Supp. 2d 144, 183-84 (E.D.N.Y. 2010)
(holding that Rule 8 (d) of the Federal Rules of Civil Procedure "explicitly permit[s] Plaintiff to
assert claims in the alternative" and that "the threshold question is whether an enforceable
contract exists that governs the subject matter underlying the unjust enrichment claim.") Since
there is a potential dispute as to the validity and enforceability of the invoices during the period
that plaintiff's status as a PACA licensee is being challenged, plaintiff may properly plead an
unjust enrichment claim as an alternative to its breach of contract claims.

"[I]n order to adequately plead * * * a claim [for unjust enrichment under New York
law], the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense,
and (3) that it is against equity and good conscience to permit the other party to retain what is
sought to be recovered." Georgia Malone, — N.E.2d—, 2012 WL 2428246; see also Golden
Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001). The complaint adequately
alleges: (1) that defendants accepted the bananas delivered to them by plaintiff during the period
that plaintiff's PACA license is in dispute; (2) that defendants failed to pay for at least some of
those bananas; and (3) that it would be inequitable to permit defendants to fail to pay plaintiff for
the bananas they received merely because plaintiff may not have had a valid PACA license for a
period of time. Indeed, PACA only provides for the imposition of a monetary penalty for
violations of the licensing provision, not for a windfall to those who do business with a seller
who may not have held a valid license at the time of the transaction.

Accordingly, the branch of defendants' cross motion seeking dismissal of plaintiff's cause
of action for damages under an unjust enrichment theory (sixth cause of action) is granted to the
extent that so much of plaintiff's sixth cause of action as seeks to recover under a quasi contract

theory upon invoices relating to transactions during the licensed periods is dismissed for failure

to state a claim for relief, and that branch of defendants' cross motion is otherwise denied.

III.    CONCLUSION

For the foregoing reasons: (1) plaintiff's motion for a preliminary injunction pursuant to

Rule 65 of the Federal Rules of Civil Procedure is granted to the extent that defense counsel shall

continue to hold the four hundred fifty thousand dollars ($450,000.00) previously deposited with

them by defendants in escrow pending final resolution of this proceeding or further order of this

Court, and the motion is otherwise denied; and (2) defendants' cross motion seeking dismissal of

plaintiff's first, second, third and sixth causes of action pursuant to Rule 12(b) of the Federal

Rules of Civil Procedure is granted to the extent that so much of plaintiff's sixth cause of action

seeking recovery for unjust enrichment as relates to invoices involving transactions occurring

during the licensed periods is dismissed, and defendants' cross motion is otherwise denied in its

entirety.  The order scheduling an initial conference before me on July 19, 2012 is hereby vacated

and this matter is respectfully referred to the Honorable William D. Wall, United States

Magistrate Judge, for all pretrial purposes.  A final pretrial conference is scheduled before me on

**December 18, 2012 at 11:15 a.m.**

SO ORDERED.

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: July 5, 2012
      Central Islip, New York