Laura M. Dilimetin (LD4718)
Lawrence and Walsh, P.C.
Attorneys for Plaintiff
215 Hilton Avenue
Hempstead, NY 11551
Ph: 516.538.2400
Fax: 516.538.2079

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

BELLEZA FRUIT, INC.,                                    12CV3033(SJF)(WDW)

                                    Plaintiff,          **NOTICE OF
                                                        PLAINTIFF'S FIRST MOTION
                                                        IN LIMINE**

            v.

SUFFOLK BANANA CO., INC., LONG ISLAND
BANANA CORP., LONG ISLAND BANANA,
and THOMAS HOEY, JR.

                                    Defendants

-----------------------------------------------------------------------x

Please take notice that on February 7, 2013, at 9:30 am, or as soon thereafter as counsel

can be heard, plaintiff will bring the following Motion in Limine against defendants SUFFOLK

BANANA CO., INC., LONG ISLAND BANANA CORP., and THOMAS HOEY JR., on for

hearing before the Honorable Sandra J. Feuerstein, United States District Court Judge for the

Eastern District of New York, in courtroom 1010, United States Courthouse located at 100

Federal Plaza, Central Islip, New York.

The relief sought: 1.Preclusion of defendants from offering testimony, exhibits, evidence

or argument concerning defenses to plaintiff's claims herein for failure to produce itemized daily

record of cash receipts, ledger records relating to the purchase and sales of bananas, cash logs,

Ryan recordings, account of sales, inspection certificates, dump slips identifying Belleza

shipments, and material and necessary documents, 2. That the Court Direct defendants to immediately pay plaintiff $349,325.25,separate and apart from the monies already in counsel's escrow account, 3.The immediate deposit of $1,064,152.87, into the escrow account, separate and apart from the $450,000.00 that is being held in escrow.

Dated: Hempstead, New York
      February 6, 2013

Respectfully submitted,
LAWRENCE AND WALSH, P.C.

Laura M. Dilimetin (LD4718)
215 Hilton Avenue
Hempstead, NY 11551
Ph: 516.538.2400
Fax: 516.538.2079

Laura M. Dilimetin (LD4718)
Lawrence and Walsh, P.C.
Attorneys for Plaintiff
215 Hilton Avenue
Hempstead, NY 11551
Ph: 516.538.2400
Fax: 516.538.2079

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

BELLEZA FRUIT, INC.,                                12CV3033(SJF)(WDW)

                              Plaintiff,            **DECLARATION OF LAURA M.
                                                    DILIMETIN IN SUPPORT OF
                                                    PLAINTIFF'S FIRST
                                                    MOTION IN LIMINE**

SUFFOLK BANANA CO., INC., LONG ISLAND
BANANA CORP., LONG ISLAND BANANA,
and THOMAS HOEY, JR.
                              Defendants

------------------------------------------------------------------x

I, LAURA M. DILIMETIN, an attorney duly authorized to practice law in the courts of

the State of New York and the United States District Court of the Eastern District of New York,

hereby affirms the truth of the following under the penalties of perjury:

1.      I am Of Counsel to the firm of Lawrence and Walsh, P.C., attorneys of record for

plaintiff in the above-captioned action.

2.      This declaration is based upon my own personal knowledge and I have personal

familiarity with the facts and circumstances of this case, except any facts stated upon information

and belief, and as to any facts stated upon information and belief I believe them to be true.

3.      This declaration is submitted in support of plaintiff's first motion in limine seeking

preclusion of defendants from offering testimony, exhibits, evidence or argument concerning

defenses to plaintiff's claims herein for failure to produce itemized daily record of cash receipts,

1

ledger records relating to the purchase and sales, cash logs, Ryan recordings, account of sales, inspection certificates, dump slips identifying Belleza shipments, and other various material and necessary documents, 2. That the Court Direct defendants to immediately pay plaintiff $349,325.25, separate and apart from the monies already in counsel's escrow account, 3.The immediate deposit of $1,413,478.12 into the escrow account, separate and apart from the $450,000.00 that is being held in escrow.

## I. DEFENDANTS' TESTIMONY SHOULD BE PRECLUDED FOR FAILURE TO PRODUCE DOCUMENTS

4.        Plaintiff requests preclusion of defendants from offering testimony, exhibits, evidence or argument concerning defenses to plaintiff's claims herein for failure to produce itemized daily record of cash receipts, ledger records relating to the purchase and sales of bananas, cash logs, Ryan recordings, account of sales, inspection certificates, dump slips identifying Belleza shipments, and other documents necessary for the claims and defenses herein. documentation of payments made by defendants to suppliers other than plaintiff, and employee W-2s, which are necessary to fully determine the expenses of the defendant corporations.

5.        Defendants have further refused to turn over any documentation relating to the assets or business dealings of defendant Hoey because they incorrectly think that he is not personally liable for the PACA trust violation of defendants. They have also refused to turn over information relating to the bank accounts controlled by defendant Hoey and his expenses for the same reason.  However, an individual who is in the position to control PACA trust assets and who does not preserve them for the beneficiary has breached a fiduciary duty, and is personally liable. 7 **U.S.C.A. 499e(c)(1)**. Therefore, defendant Hoey should be compelled to fully answer all document requests and interrogatories directed to him, as well as deposition questions.

2

6.      Defendant Hoey testified at his deposition taken on January 25, 2013, **Exhibit "A"**, that he removed cash from the Long Island Banana safe and used that cash for personal expenses p.45, p.109.   Plaintiff requested those documents and any documents related to plaintiff's claims of trust violations, and plaintiff requested the documents after the deposition. **Exhibit "B"**.  Defendants stated that they will not respond to plaintiff's letter request and that they will not produce further discovery.  Plaintiff is entitled to see those cash logs and ledgers and receipts based upon the statute above and because that cash should have been secured as trust funds for plaintiff pursuant to PACA.   Mike Stamatis has stated that he witnessed Mr. Hoey routinely remove cash from the safe and use it to pay for alcohol and other personal expenses at bars, clubs, his body guard, and other and various philandering.  All of that cash and monies should have been secured for plaintiff's trust.

7.      Defendants should be precluded from arguing any quality issues with the bananas purchased from plaintiff since defendants have not produced the documents required by PACA statute and regulations.  **7 C.F.R. section 46.15** requires certain documents to be preserved. "confirmations   and   memorandums   of   sales....inspection   certificates...receiving records...accounts of sales... papers relating to loss and damage...records...dumping...an itemized daily record of cash receipts, ledger records in which purchases and sales can be verified...shall be preserved for a period of 2 years".

8.      Defendants assert that they do not owe certain money to plaintiff since there were certain defects in the quality of the fruit purchased from plaintiff.  Defendants' Analysis annexed as **Exhibit "C"**, Defendants' packet of alleged claims annexed as **Exhibit "F"**. While there may have been issues from time to time, defendants are obligated to notify plaintiff in a timely manner with the proper documents to prove their claims.   Defendants claim they dumped

3

shipments but do not provide a dump slip to correspond with the shipment at issue. If a dump slip was produced, it did not identify what was being dumped. On some of the dump slips it did not relate to bananas at all, and sometimes stated "bulky trash". A dump slip for bulky trash cannot be used to support the claim for a dump of bananas since the actual shipment and load must be identified to substantiate a claim. None of the dump slips identify which shipment it relates to and defendants failed to produce any receipts for payments of the dump. Since defendants failed to produce the proper and required documents, defendants should be precluded from arguing a particular load was dumped. **7 C.F.R. Section 46.23** Evidence of dumping needs an inspection report to show "no commercial value". Since that was not done here, as a matter of law, defendants must be precluded from making those arguments.

9.    Further, defendants are attempting to manipulate the process by claiming now that there were defects in the product, when in fact defendants merely felt the price was too high so they unilaterally changed it, and "clipped" the invoice. **See Exhibit "G".** Defendants consistently unilaterally changed the price on the bills of lading after the parties had agreed upon the terms. Now, after this claim was initiated, defendants attempt to argue that they had made a claim against the quality of the produce. The facts do not support their alleged "claim" arguments, since the evidence points to the fact defendants just wanted to take advantage of plaintiff, not pay fully, and unilaterally change the price to their liking. Accordingly, defendants should be precluded from making these arguments since they failed to preserve the proper documents pursuant to PACA rules and regulations.

10.   Under the New York Uniform Commercial Code, the buyer must notify the seller "within a reasonable time after he discovers or should have discovered" defects in the product. NY UCC §2-607(3)(a). The party claiming a breach with respect to the goods accepted has the

4

burden of proving the defect in the product. NY UCC §2-607(4). *See also Koam Produce, Inc. v. DiMare Homestead, Inc.*, 213 F.Supp.2d 314, 322 (S.D.N.Y. 2002). Defendant claims that they have sent notices of claim for defective fruit, when, in fact, the majority of their "claims" consist of notices of *potential* claim, which were not followed by notices of claim. The notices of potential claim were at times sent months after the produce was delivered, which is not within a reasonable time considering the nature of perishable commodities and the purpose of the PACA. There was no neutral third party inspection or USDA inspection which is customary and usual practice in the industry.

11. In the same manner, defendants do not produce inspection reports and accounts of sale as required by the rules and regulations in order to prove defects in quality. An inspection report and an account of sale are necessary to show what price was obtained when defendants sold the fruit that had been noticed as defective. As well, defendants failed to produce ledger records in which purchases and sales can be verified. There is no way to track the receivables obtained from the sale of Belleza bananas. Defendants testified that they had other suppliers in addition to plaintiff and that they co mingled all of the funds and receivables. Defendants produced no documents that would identify the purchases of Belleza bananas and the resulting sales therefrom. **7 C.F.R. Section 46.15.**

12. Plaintiff requested that defendants produce any Ryan recordings that they had to support their assertions that there were defects in the bananas. Defendants presented counsel with an envelope of the recordings and refused to copy them. In addition, there was no way to identify which recording correlated to which invoice or shipment. Plaintiff requested them to be copied and for the identifying information. **Exhibit "B"** (email on last page), defendants refused to comply. Accordingly defendants should be precluded from offering evidence or arguments that

5

there were defects in any of the fruit sold to defendants.

13. Plaintiff received some potential claims and some notice of claims and acknowledged that, see **Exhibit "D"**. The other alleged claims proffered in defendants' packet of claims **Exhibit "F"**, had not been communicated to plaintiff and should be precluded from testimony at trial. In addition, of the claims acknowledged by plaintiff, none have the proper supporting documentation to substantiate a claim. Pursuant to the PACA rules and regulations, defendants have violated several statutory requirements to preserve the necessary documents. Accordingly, defendants should be precluded from arguing that there were defects in the product when they don't even produce the required documents. The bottom line is defendants failed to reject the product pursuant to 7 C.F.R. Section 46.2 (cc) and (dd), and failed to notify plaintiff of any alleged defects with the proper time requirements to enable plaintiff to address the issue with the grower. The evidence shows that defendants had no intention of making claims for those shipments because they were able to sell all of the bananas. If there were unable to sell the bananas there would be legitimate accounts of sales and dump slips that identified the load and shipment. Accordingly, defendants must be precluded from arguing defects in the quality fo the produce.

## II. DEFENDANTS ADMIT VIOLATING THE STATUTORY TRUST PURSUANT TO 7 C.F.R. SECTION 46.46 $349,325.25 SHOULD BE IMMEDIATELY PAID TO PLAINTIFF, AND $1,064,152.87 SHOULD BE DEPOSITED INTO ESCROW

14. Most importantly, defendants testified that he regularly took cash from the safe located at Long Island Banana, and used it for personal expenses. In addition he kept a cash log. Hoey Deposition **Exhibit "A", pp. 45, 109.** Mr. Stamatis witnessed Mr. Hoey take cash from the safe at LIB and use that cash for personal expenses. Mr. Stamatis regularly witnessed Mr. Hoey spending thousands of dollars at various clubs in the New York Metro area with cash taken from

the LIB safe.  Defendant Hoey also testified that Belleza bananas would be sold for cash and that cash would be placed in the safe at LIB.

15. In addition, the payment of settlements of two cases, Pacific Fruit v. Long Island Banana, and New England Banana v. Long Island Banana et al, 2:11 cv 05650 (JS)(ETB), occurred after plaintiff's lawsuit was instituted and thus the dissipation of plaintiff's trust assets are continuing to happen by the principal and sole shareholder of LIB, Defendants Hoey.  New England Banana Resolved disputes and exchanged mutual releases, the action is Terminated 10/09/2012.

16. Defendants have admitted to violating the PACA statutory trust by acknowledging at deposition that he owes plaintiff a "few hundred thousand dollars".  **Exhibit "A"** p. 184, 216, Defendants should not be permitted to offer testimony or evidence relating to the trust. Defendants are in violation of the PACA Rules and Regulations and must be held immediately accountable. **7 U.S.C.A.499e(c)(2).**  Defendants' own analysis of the claims shows that they owe $349,325.25.  **Exhibit "C"** p. A630.  Defendants should be directed to pay plaintiff the $349, 325.25 immediately as Plaintiff has suspended business and plaintiff's suppliers and growers are in jeopardy of going out of business.  Defendants admitted to violating the PACA trust by using plaintiff's trust monies to pay ordinary business expenses. Despite defendants' admission that they owe plaintiff money, they saw fit to use plaintiff's money on personal expenses, ordinary business expenses and other various improper uses.

17. Defendants have used plaintiff's trust money, knowing that there is a balance owed, to start an importing business for Mi Sole.  See **Exhibit "E"**.  Defendants have admitted involvement and importing business and using monies to fund this venture. Exhibit "A" pp. 39-45, 53.  Defendant Hoey admits that he violated the trust provision of the PACA rules and regulations by failing to segregate and preserve plaintiff's trust monies properly.  At defendant

7

Hoey's deposition, he stated that he was unaware that he had to preserve plaintiff's money. **Exhibit "A"**, pp. 178-179.

18. Preclude defendants from arguing against plaintiff's statutory trust **7 C.F.R. Section 46.46.** Mr. Hoey is the principal and sole shareholder of defendant companies. He has admitted that he is in charge of defendants' assets. Mr. Hoey has admitted that defendants owe "a couple hundred thousand dollars" to plaintiff. Their own exhibit shows that they owe $349,325.25 see Analysis of Belleza invoices for Long Island Banana, A630 annexed as **Exhibit "C"**. Defendant Hoey is intrically involved in a Murder investigation and is the target of a Grand Jury Probe of the death of a woman, Kimberly Calo, after sex and drugs at a New York City Hotel with Mr. Hoey, and his then girlfriend, Nicole Zobkiw. The monies used to defend against these charges are depleting and dissipating plaintiff's trust assets and are being used at the expense of paying plaintiff the monies rightfully owed to them.

19. The federal probe has intensified and the possibility of jail or a significant bond will mean the possibility that defendants will not have money to pay what is owed to plaintiff. Plaintiff is requesting that $1,064,152.87 which represents money due plaintiff during the time plaintiff cured its license fee payment deficiency, plus $181,116.00[1] which represents monies that became due after the lawsuit was filed be deposited into the escrow account held in this matter. Plaintiff requests that the total of $1,245,268.80 be deposited in escrow. According to

---

[1] In that this Court found plaintiff likely to succeed on at least $319,707.50 of its claim, and $181,116.00 of the claim was not initially considered by the Court because it had not become due at that time. The initial consideration at the preliminary injunction stage did not include the amounts from the last thirteen (13) invoices (three from Suffolk Banana – Invoice #3425, 3444, 3447 and ten from Long Island Banana – Invoice #3412, 3413, 3414, 3408, 3411, 3439, 3443, 3446, 3448, 3449), which had not become due at the time of the hearing in June of 2012. Each invoice was in the amount of $13,982.00. Those invoices are now due and undisputedly owed to plaintiff in the amount of $181,116.00, and defendants have no excuse for not turning over those monies.

8

defendants' own figures and calculations Analysis of Belleza, annexed as **Exhibit "C",** see DEF 0168.

20. Mr. Hoey is the sole shareholder and is in control of the defendants' assets. An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty. *Coosemans, 485 F.3d see also Weis-Buy Serv. Inc. v. Paglia, 411 F.3d 415, 421 (3d Cir. 2005), Patterson Frozen Foods Inc. v. Crown Foods Intl. Inc., 307 F.3d 666, 669 (7th Cir. 2002)*(PACA permits recovery against controlling officers of corporation), *Morris Okun, Inc., v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993)*(sole shareholder and officer who controlled day to day operations held liable). Since there is no material issue of fact as to whether Mr. Hoey is the sole shareholder or controls the assets and the day to day operations, Mr. Hoey is liable and should be directed to make the immediate payment requested herein.

21. Plaintiff has been forced to cease operations because of defendants' failure to pay. This payment would go directly to plaintiff's suppliers and growers to help prevent a total collapse of plaintiff's operations. The payment is needed to prevent plaintiff's total collapse. PACA serves to "provide suppliers and sellers of fruits and vegetables, or their agents, [with] a self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruit." *Hiller Cranberry Prods. v. Koplovsky*, 165 F.3d 1, 8 (1st Cir. 1999)(quoting 49 Fed. Reg. 45,735, 45,737 (1984)). Another purpose of PACA is to give monies due and owing to the seller as soon as possible, so that they may continue operations and their suppliers can get paid. *Coosemans Specialties Inc. v. Gargiulo*, 485 F.3d 701 (2d Cir. 2007). The immediate turnover of the money undisputedly owed to plaintiff is a logical extension of the statutory purpose of PACA. In conjunction with the

9

self-help concept, the immediate turnover of monies owed is directly in line with the statutory intent, purpose, and goal of the PACA.

22.     The PACA statute is also intended to remedy the "domino effect" caused by a dealer's failure to pay for produce. "Failure to pay" violations not only affect the party who is not paid, but such violations snowball. "[O]ne licensee fails to pay another licensee who is then unable to pay a third licensee. This could have serious repercussions to producers, licensees and consumers." *In re Columbus Fruit Co.*, 40 Agric. Dec. 109, 114 (1981), aff'd. mem., 41 Agric. Dec. 89 (D.C. Cir. No. 81-1446, January 19, 1982). In this case, as a direct result of defendants' failure to pay plaintiff, plaintiff is unable to pay its suppliers and several businesses are now in jeopardy of going out of business.

23. Since summary judgment is warranted in PACA cases where the relevant facts are undisputed and the applicable legal issues were uncomplicated. It can even be granted without briefing, made orally at a conference. *Food Authority, Inc. v. Sweet & Savory Fine Foods, Inc. et al, 2011 U.S. Dist. LEXIS 11039 (E.D.N.Y. 2011)(10CV1738)(JS)(WDW)*. Accordingly, the direction of immediate payment of the admittedly owed monies to plaintiff are warranted.

Dated: Hempstead, New York
February 6, 2013

Respectfully submitted,
LAWRENCE AND WALSH, P.C.

Laura M. Dilimetin (LD4718)
215 Hilton Avenue
Hempstead, NY 11551
Ph: 516.538.2400
Fax: 516.538.2079

10